## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

LINDA EAGLE,

                           **Plaintiff,**

                  **v.**

SANDI MORGAN, HAITHAM SAEAD,
JOSEPH MELLACI, ELIZABETH
SWEENEY, LISA ARNSPERGER, QAMAR
ZAMAN, and EDCOMM, INC.,

                           **Defendants.**

Civil Action No. _____

## COMPLAINT

Plaintiff Linda Eagle brings this civil action against Defendants Sandi Morgan, Haitham

Saead, Joseph Mellaci, Elizabeth Sweeney, Lisa Arnsperger, Qamar Zaman, and Edcomm, Inc.

("Edcomm") seeking a temporary restraining order, preliminary and permanent injunctive relief,

and damages, and in support thereof alleges as follows:

### PARTIES

1.      Plaintiff Dr. Linda Eagle is an individual domiciled in Boca Raton, Florida.

2.      Defendant Edcomm is a corporation organized under the laws of New York with

its principal place of business in Fort Washington, Pennsylvania.  Edcomm contends that its

shares are 100 percent owned by Sawabeh Information Services Company ("SISCOM") or it is

otherwise affiliated with SISCOM, a company that is, upon information and belief, organized

under the laws of Saudi Arabia and regularly does business in Pennsylvania.  At all times

relevant hereto, Edcomm used the brand name "Banker's Academy."

3.      Defendant Sandi Morgan is an individual who, upon information and belief, resides in Bala Cynwyd, Pennsylvania. At all times relevant hereto, Ms. Morgan has been an employee of Edcomm.

4.      Defendant Haitham Saead is, upon information and belief, a citizen of Saudi Arabia or Jordan who presently resides in or around Willow Grove, Pennsylvania. Upon information and belief, since approximately March 2011 Mr. Saead has been the Managing Director of Edcomm and has primarily worked in Fort Washington, Pennsylvania. Upon information and belief, he is an officer and employee of SISCOM or its parent corporation.

5.      Defendant Joseph Mellaci is an individual who, upon information and belief, resides in the State of Connecticut. At all times relevant hereto, Mr. Mellaci has been an employee of Edcomm and has worked at its offices in Fort Washington, Pennsylvania.

6.      Defendant Elizabeth Sweeney is an individual residing in or near Fort Washington, Pennsylvania. At all times relevant hereto, Ms. Sweeney has been an employee of Edcomm in Fort Washington, Pennsylvania.

7.      Defendant Lisa Arnsperger is an individual residing in or near Fort Washington, Pennsylvania. At all times relevant hereto, Ms. Arnsperger has been an employee of Edcomm in Fort Washington, Pennsylvania.

8.      Defendant Qamar Zaman is an individual who, upon information and belief, is a citizen of Canada and currently resides in or around Fort Washington, Pennsylvania. At all times relevant hereto, Mr. Zaman has been an employee of Edcomm and/or SISCOM and has worked in Edcomm's office in Fort Washington, Pennsylvania.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367, because Dr. Eagle has asserted claims arising under the Federal Computer

Fraud and Abuse Act, 18 U.S.C. § 1030(g) ("CFAA"), and Section 43(a) of the Lanham Act, 15 U.S.C.A. § 1125(a)(1)(A).

10.     Venue is appropriate in this judicial district because the events giving rise to Dr. Eagle's claims occurred at the Edcomm office in Fort Washington, Montgomery County, Pennsylvania, in this district. *See* 28 U.S.C. § 1391(b).

## FACTS COMMON TO ALL COUNTS

11.     Dr. Eagle holds a Ph.D. in communication and psychology and has extensive experience in the fields of financial services and training.  As a result of her knowledge and experience, Dr. Eagle has developed a world-wide reputation as a leader in the field of financial education.

12.     In or about 1987, Dr. Eagle and non-party Clifford Brody founded Edcomm; they were later joined as co-owners by David Shapp.  In recent years, Dr. Eagle was President of Edcomm, Mr. Brody was CEO of Edcomm, and Mr. Shapp was Senior Vice President and Treasurer of Edcomm.

13.     Dr. Eagle is perhaps the most prominent woman in the field of banking training in the world.  In the field, her name has become associated with financial education through her networking, cultivation of relationships with thousands of individuals and organizations, and similar efforts to develop the commercial value of her name.  Simply by way of example, Dr. Eagle was invited by the Saudi Arabian Monetary Authority to address an audience of at least 300 bankers on the topic of creating a culture of compliance.  Dr. Eagle was the first woman to address this historically all-male conference.

14.     Dr. Eagle has invested time, effort, and money in developing her reputation in the financial education industry by, among other things, speaking at conferences, publishing in journals, magazines and newspapers, traveling around the world to meet banking leaders.

15.     LinkedIn "operates the world's largest professional network on the Internet with more than 100 million members in over 200 countries and territories." *See* Ex. A (LinkedIn "About Us").

16.     In or about 2008, Dr. Eagle established a LinkedIn account.  Dr. Eagle used LinkedIn not only for purposes of promoting Edcomm's banking education services, but also to foster her reputation as a businesswoman; to reconnect with family, former friends, and colleagues; and to build social and professional relationships.

17.     Defendant Elizabeth Sweeney assisted Dr. Eagle in maintaining her LinkedIn account and had Dr. Eagle's password.

18.     Mr. Brody also established a LinkedIn account, as did other Edcomm employees.

19.     Edcomm consistently recognized that LinkedIn accounts of Edcomm employees were the employees' personal property, and Edcomm did not assert ownership or property rights over LinkedIn accounts of employees when they departed.

20.     When an individual creates a LinkedIn account, he or she must agree to the terms in LinkedIn's user agreement, "a legally binding agreement with LinkedIn Corporation." Ex. B, ¶ 1.B (LinkedIn User Agreement).

21.     The agreement explains the mission of LinkedIn:

> The mission of LinkedIn is to connect the world's professionals to enable them to be more production and successful.  To achieve our Mission, we make services available through our website, mobile applications, and developer platform, to help you, your connections, and millions of other professionals meet, exchange ideas, learn, make deals, find opportunities or employees, work, and make decisions in a network of trusted relationships and groups.

*Id.* ¶ 1.A (User Agreement).

22.     Other LinkedIn users with whom a particular user has connected are referred to as that user's "connections." *See* Ex. C (LinkedIn "Definition of a Contact").

23.     LinkedIn users can "recommend" their connections, providing a comment on the recommended user's page to "advocate" that user, "[b]uild[] reputation," and "strengthen . . . relationships. *See* Ex. D (LinkedIn "Definition of a Recommendation").

24.     A user's profile also contains sections for associations, honors, and awards.

25.     Information provided to LinkedIn is owned by the LinkedIn user, subject to the other terms of the User Agreement. *See* Ex. B, ¶ 2.B (LinkedIn User Agreement). Therefore, Dr. Eagle, and no one else, owns her LinkedIn account and has the right to use it.

26.     LinkedIn users are permitted to "only maintain one LinkedIn account at any given time." *Id.* ¶ 2.C.

27.     On October 7, 2010, SISCOM, Edcomm, Dr. Eagle, Mr. Brody, and Mr. Shapp entered into a Term Sheet. SISCOM and Edcomm contend that SISCOM thereby purchased all of the outstanding common shares of Edcomm. While the legal effect of the Term Sheet is now disputed, there is no dispute that Dr. Eagle, Mr. Brody, and Mr. Shapp remained Edcomm executives and continued in its employ.

28.     On June 20, 2011, Dr. Eagle, Mr. Brody, and Mr. Shapp were involuntarily terminated from their employment with Edcomm by Mr. Saead.

29.     Right before this meeting, Mr. Brody became suspicious when he got a LinkedIn message that his password was incorrect; he changed his password.   Immediately after he was terminated, he changed his employment status on LinkedIn to show that he was no longer employed by Edcomm.

30.     Dr. Eagle did not make any changes to her LinkedIn account at that time.

31.     Later in the day on June 20, Dr. Eagle tried to access her LinkedIn account using her password, but could not.

32.     On June 21, 2011, Edcomm publicly announced that Ms. Morgan had been appointed Interim Chief Executive Officer (CEO) of Edcomm.  *See Ex. E.*

33.     On the same date, Edcomm publicly announced that Mr. Mellaci had been named Vice President of Global Markets  *See id.*

34.     On the same date, Edcomm publicly announced that Mr. Zaman had been named Financial Controller.  *See id.*

35.     On June 20 or 21, at the Edcomm offices in Fort Washington, Montgomery County, defendants Morgan, Saead, Sweeney, Arnsperger, Mellaci, and Zaman, in conspiracy with one another, set about to access and hijack the LinkedIn accounts of Dr. Eagle and Mr. Brody.

36.     Ms. Sweeney knew Dr. Eagle's LinkedIn password, because Dr. Eagle had previously asked Ms. Sweeney to review and revise portions of her profile having to do with Edcomm.

37.     Upon information and belief, Ms. Sweeney provided Dr. Eagle's password to Mr. Saead and/or Ms. Arnsperger after Dr. Eagle had been terminated from her employment with Edcomm, at a time when Ms. Sweeney knew or should have know that her authorization to access Dr. Eagle's LinkedIn account had been revoked.

38.     Mr. Saead, Ms. Sweeney, and Ms. Arnsperger then used Dr. Eagle's password, without Dr. Eagle's authorization, to access Dr. Eagle's LinkedIn account.

39.     Having accessed Dr. Eagle's account, one or more of them changed the password to Dr. Eagle's LinkedIn account so that Dr. Eagle could no longer access her account.

40.     They then, in consultation with each other and with Mr. Zaman, changed

Dr. Eagle's account profile to display Ms. Morgan's name and photograph.

41.     Defendants thereby misappropriated Dr. Eagle's LinkedIn profile and account

information, including her honors and awards, her recommendations, and her connections.

42.     On the same date, Defendants also tried to hijack Mr. Brody's LinkedIn account.

43.     Ms. Sweeney told Mr. Mellaci, Mr. Saead, and Ms. Morgan that she and

Ms. Arnsperger had sent an email to LinkedIn stating -- falsely -- that Mr. Brody's LinkedIn

account had been hacked.

44.     Mr. Mellaci then spoke on the telephone to a LinkedIn representative,

impersonating Mr. Brody, in an attempt to obtain Mr. Brody's LinkedIn password; however, he

was unsuccessful.

45.     On information and belief, Ms. Morgan knew of, approved and/or authorized the

actions described in paragraphs 35-44, and she has further joined in the conspiracy by using

Dr. Eagle's LinkedIn account.

46.     The actions described above were taken by Morgan, Saead, Mellaci, Sweeney,

Arnsperger, and Zaman in the Fort Washington office of Edcomm, within the scope of their

employment at Edcomm, and for and on behalf of Edcomm.

47.     As a result of the unauthorized access and misappropriation of Dr. Eagle's

LinkedIn account, individuals searching for Dr. Eagle are routed to a LinkedIn page featuring

Ms. Morgan's name and photograph, but Dr. Eagle's honors and awards, recommendations and

connections. *See* Ex. F.

48.     By way of example, the page contained the following text in the

"Recommendations" section:

> Dr. Linda is my business partner and one of my oldest friends. We
> worked together first at Arthur Andersen & Co. where we
> spearheaded the creation of their Education practice, then at Sandy
> corporation where we launched their New York office and
> Financial Services Practice, before we founded The Edcomm
> Group Banker's Academy. . . . As thousands of clients we serve
> and the hundreds of thousands of individuals who have heard
> Linda's lectures can tell you -- Linda is the best!

Ex. F.

49.     Individuals searching for Dr. Eagle continue to be routed to a LinkedIn page

featuring Ms. Morgan's name and photograph, but Dr. Eagle's honors and awards and

connections.

50.     When an individual types "Linda Eagle" into the Google search engine, the third

result is for "Dr. Linda Eagle | LinkedIn." *See* Ex. G.

51.     When the individual clicks on that link, the individual is taken to a LinkedIn page

with Ms. Morgan's name and photograph, but with Dr. Eagle's honors and awards and

connections. *See* Ex. H.

52.     By way of example, the page contains the following text under the heading

"Honors and Awards":

> I have served in an advisory capacity to numerous organizations,
> including several local colleges with outreach programs directed at
> developing business training programs to prepare young adults for
> careers in banking. I have also served on the Board of Ethics in
> Business for the Temple University Law School and Business
> School, and have held numerous offices and board positions in
> professional associations and business organizations such as
> Bankers Online, ACAMS, Marcus Evans and Global Leaders.

53.     These honors were received by Dr. Eagle, not by Ms. Morgan. By way of

example, the Board of Ethics position at Temple University was awarded to Dr. Eagle following

a presentation she made to a meeting of the American Bar Association in Seattle, Washington.

Ms. Morgan was not involved with, present at, or employed by Edcomm at the time of that meeting or Dr. Eagle's service on the Board of Ethics.

54.     Upon information and belief, Defendants are using Dr. Eagle's account both to prevent her connections from reaching her, and to acquire business connections for the benefit of Ms. Morgan and Edcomm.

55.     Upon information and belief, Defendants are using Dr. Eagle's account and the connections that Defendants make there to falsely represent that Dr. Eagle voluntarily resigned from Edcomm.  These and other false and disparaging statements that Defendants are making harm Dr. Eagle's professional and personal reputation, which is built in significant part on trust.

56.     As a result of the hijacking of her LinkedIn page, Dr. Eagle has spent time and money in an effort to have the misappropriated account returned to her.

57.     In addition, the misappropriation of Dr. Eagle's LinkedIn page has caused the loss of the value of her LinkedIn account; confusion among her connections and potential connections; damage to her reputation; diminution of the fair market value of Dr. Eagle's name; and the loss of good will associated with her name.

58.     On June 22, 2011, counsel for Dr. Eagle, Mr. Brody, and Mr. Shapp wrote to counsel for Edcomm in an effort to resolve the issue amicably, saying:

> I understand that one or more persons affiliated with Edcomm or SISCOM has changed Dr. Eagle's LinkedIn password and account profile without her authorization and has further misappropriated Dr. Eagle's professional and personal information, including references and awards given to her, . . . as well as her contacts, and is falsely attributing them to Sandi Morgan.  These actions are harmful to Dr. Eagle and have serious legal implications.  *We demand that Edcomm immediately remove Sandi Morgan from Dr. Eagle's LinkedIn page and release her LinkedIn account to her with her password reset as it was before termination or with full information about her password, and with information about any additional changes that have been made.*

(Emphasis added.)

59.     Notwithstanding the June 22 letter, Defendants have refused to return Dr. Eagle's LinkedIn account to her.

60.     In stealing Dr. Eagle's LinkedIn account, falsely attributing it to Ms. Morgan, and failing to release it to Dr. Eagle, Defendants have acted intentionally, outrageously, contrary to professional standards, and with obvious disregard and/or reckless indifference to the rights of Dr. Eagle.

## CAUSES OF ACTION

### COUNT I
### (VIOLATION OF CFAA, 18 U.S.C. § 1030(A)(2)(C))

61.     Each of the preceding paragraphs is incorporated herein by reference.

62.     18 U.S.C. § 1030(a)(2)(C) prohibits, in relevant part:

> intentionally accesses[ing] a computer without authorization or exceed[ing] authorized access, and thereby obtain[ing] . . . information from any protected computer . . . .

63.     Defendants have intentionally and repeatedly accessed Dr. Eagle's LinkedIn account, which is hosted, on information and belief, on LinkedIn's "data storage facility or communications facility directly related to or operating in conjunction with" a computer as defined in 47 U.S.C. § 1030(e)(1).

64.     Since June 20, 2011, Defendants have accessed and continue to Dr. Eagle's LinkedIn account without authorization from Dr. Eagle or her authorized representative.

65.     Defendants are accessing Dr. Eagle's LinkedIn account for the purpose of misappropriating Dr. Eagle's LinkedIn account and the information contained there, to use that account and information for their own benefit and to prevent Dr. Eagle from accessing or using the account and information

66.     Through their unauthorized access and misappropriation of Dr. Eagle's LinkedIn account, Defendants obtained information -- and sole control over that information -- from LinkedIn's servers, namely, the information on Dr. Eagle's LinkedIn profile.

67.     According to LinkedIn, "[m]ore than half of LinkedIn members are currently located outside of the United States." Ex. A (About Us).

68.     Therefore, the servers from which Defendants obtained the information are "protected computers" within the meaning of 47 U.S.C. § 1030(e)(2), in that they are "used in or affect[] interstate or foreign commerce or communication."

69.     As a result of Defendants' unauthorized access and misappropriation of Dr. Eagle's LinkedIn account and Defendants' having obtained information -- and sole control over that information -- from Dr. Eagle's LinkedIn account, Dr. Eagle has suffered loss, including but not limited to the cost of responding to Defendants' unauthorized access of her LinkedIn account and the cost of seeking to have the misappropriated account returned to her, as well as damage to her reputation, aggregating at least $5,000.

WHEREFORE, Plaintiff Linda Eagle demands the entry of judgment in her favor and against Defendants, injunctive relief in the form of an order requiring Defendant to cease and desist from using Dr. Eagle's LinkedIn account, compensatory damages, reasonable attorney fees, interest, and such other relief as the Court deems just.

## COUNT II
## (VIOLATION OF CFAA, 18 U.S.C. § 1030(A)(5)(C))

70.     Each of the preceding paragraphs is incorporated herein by reference.

71.     18 U.S.C. § 1030(a)(5)(C) prohibits, in relevant part:

> intentionally access[ing] a protected computer without
> authorization, and as a result of such conduct, caus[ing] damage
> and loss. . . .

72.     Defendants intentionally accessed Dr. Eagle's LinkedIn account, which is hosted on LinkedIn's "data storage facility or communications facility directly related to or operating in conjunction with" a computer as defined in 47 U.S.C. § 1030(e)(1), without authorization for the purpose of misappropriating Dr. Eagle's LinkedIn account.

73.     As a result of Defendants' unauthorized access and misappropriation of Dr. Eagle's LinkedIn account, the integrity of Dr. Eagle's LinkedIn account has been impaired and the LinkedIn system and information have become unavailable to Dr. Eagle.

74.     As a result of Defendants' unauthorized access and misappropriation of Dr. Eagle's LinkedIn account, Dr. Eagle has suffered loss, including but not limited to the cost of responding to Defendants' unauthorized access of her LinkedIn account, as well as damage to her reputation, aggregating at least $5,000.

WHEREFORE, Plaintiff Linda Eagle demands the entry of judgment in her favor and against Defendants, injunctive relief in the form of an order requiring Defendant to cease and desist from using Dr. Eagle's LinkedIn account, actual damages, reasonable attorney fees, interest, and such other relief as the Court deems just.

## COUNT III
### (VIOLATION OF SECTION 43(A) OF THE LANHAM ACT, 15 U.S.C. § 1125(A)(1)(A))

75.     Each of the preceding paragraphs is incorporated herein by reference.

76.     15 U.S.C. § 1125(a)(1)(A) provides, in pertinent part:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . .

shall be liable in a civil action by any person who believes that he
or she is or is likely to be damaged by such act.

77.     In connection with Edcomm's services, Defendants have used and continue to use

Dr. Eagle's name and LinkedIn account without Dr. Eagle's permission in a manner that is likely

to cause confusion, cause mistake, or deceive members of the industry and potential customers as

to the affiliation, connection, or association of Dr. Eagle with Ms. Morgan and/or Edcomm

and/or to suggest, imply, and/or represent approval of Edcomm's services, and/or to cause

confusion, mistake, or deception as to the sponsorship or approval of Ms. Morgan and Edcomm

by Dr. Eagle.

78.     Defendants intentionally, deliberately, and willfully used Dr. Eagle's name and

LinkedIn account, without consent or permission from Dr. Eagle or her authorized

representative.

79.     Dr. Eagle has a reasonable interest to be protected by 15 U.S.C. § 1125 -- namely,

her name and her reputation in the field of financial and professional education associated with

her name -- and that interest sustained a direct injury as a consequence of Defendants'

misappropriation of Dr. Eagle's name and LinkedIn account.

80.     Defendants have derived and continue to derive pecuniary and financial

advantage or benefit from the unauthorized use of Dr. Eagle's name and LinkedIn account

information.

81.     As a result of Defendants' unauthorized use of Dr. Eagle's name and LinkedIn

account, Plaintiff has sustained loss or injury, including, but not limited to, depreciation of the

value of her name in connection with future commercial profits.

82.     Dr. Eagle thus seeks damages for all injuries, damages and losses resulting from

Defendants' misappropriation of her name, including, but not limited to, damages for the

diminution of the fair market value of her name, damages for the loss of good will associated

with her name, and damages for the value that use of her name brought to Defendants'

promotion of Edcomm; these damages include the amount which Dr. Eagle's name was deemed

to have been worth to Defendant and the diminution of value of Dr. Eagle's name in connection

with her future commercial pursuits.

83.     Dr. Eagle also seeks injunctive relief pursuant to 15 U.S.C. § 1116, in the form of

an order requiring Defendant to cease and desist from using Dr. Eagle's name and LinkedIn

account.

WHEREFORE, Plaintiff Linda Eagle demands the entry of judgment in her favor and

against Defendants, injunctive relief in the form of an order requiring Defendant to cease and

desist from using Dr. Eagle's LinkedIn account, compensatory damages, reasonable attorney

fees, interest, and such other relief as the Court deems just.

## COUNT IV
## (UNAUTHORIZED USE OF NAME IN VIOLATION OF 42 PA. CONS. STAT. § 8316)

84.     Each of the preceding paragraphs is incorporated herein by reference.

85.     42 Pa. Cons. Stat. § 8316 provides, in pertinent part:

> Any natural person whose name or likeness has commercial value
> and is used for any commercial or advertising purpose without the
> written consent of such natural person . . . may bring an action to
> enjoin such unauthorized use and to recover damages for any loss
> or injury sustained by such use.

86.     Dr. Eagle's name has commercial value as a result of her networking and

cultivation of contacts, in part through LinkedIn, and her prestige in and association with the

field of education.

87.     Defendants have derived and continue to derive advantage and/or benefit from the

unauthorized use of Dr. Eagle's name.

88.   Defendants unlawfully used and misappropriated Dr. Eagle's name, without her or her authorized representative's consent, for purposes of promoting Edcomm.

89.   Defendants intend to realize, intended to realize, or realized financial benefit by their unauthorized use of Dr. Eagle's name and LinkedIn account.

90.   As a result of Defendants' unauthorized use of Dr. Eagle's name and LinkedIn account, Dr. Eagle has sustained loss or injury, including, but not limited to, depreciation of the value of her name in connection with her future commercial profits in the education industry.

91.   Additionally, Defendants have actual knowledge that they are using Dr. Eagle's name without any right, license or permission in connection with Edcomm's presence and promotion on LinkedIn.  Accordingly, Defendants knowingly misappropriated Dr. Eagle's name and LinkedIn account.

92.   Dr. Eagle thus seeks damages for all injuries, damages and losses resulting from Defendants' misappropriation of her name, including, but not limited to, damages for the diminution of the fair market value of her name, damages for the loss of good will associated with her name, and damages for the value that use of her name brought to Defendants' promotion of Edcomm; these damages include the amount which Dr. Eagle's name was deemed to have been worth to Defendant and the diminution of value of Dr. Eagle's name in connection with her future commercial pursuits.

93.   Dr. Eagle also seeks injunctive relief in the form of an order requiring Defendants to cease and desist from using Dr. Eagle's name and LinkedIn account.

WHEREFORE, Plaintiff Linda Eagle demands the entry of judgment in her favor and against Defendants, injunctive relief in the form of an order requiring Defendant to cease and

desist from using Dr. Eagle's LinkedIn account, compensatory damages, punitive damages, reasonable attorney fees, interest, and such other relief as the Court deems just.

## COUNT V
## (INVASION OF PRIVACY BY MISAPPROPRIATION OF IDENTITY)

94.    Each of the preceding paragraphs is incorporated herein by reference.

95.    Defendants appropriated to their use and benefit Dr. Eagle's name and LinkedIn account without Dr. Eagle's consent or permission from her authorized representative.

96.    Defendants deliberately used Dr. Eagle's name and LinkedIn account in order to promote Edcomm, and accordingly for their own financial interest, knowing that they did not have permission or consent to do so.

97.    Defendants misappropriated Dr. Eagle's name and LinkedIn account information for the value associated with it and not in an incidental manner or for a newsworthy purpose.

98.    Defendants derived financial advantage or benefit from the unauthorized use of Dr. Eagle's name and the misappropriation of her LinkedIn account.

99.    Dr. Eagle thus seeks damages for all injuries, damages and losses resulting from Defendants' misappropriation of her name, including, but not limited to, damages for the diminution of the fair market value of her name, damages for the loss of good will associated with her name, and damages for the value that use of her name brought to Defendants' promotion of Edcomm; these damages include the amount which Dr. Eagle's name was deemed to have been worth to Defendant and the diminution of value of Dr. Eagle's name in connection with her future commercial pursuits.

100.    Plaintiff also seeks injunctive relief in the form of an order requiring Defendants to cease and desist from using Dr. Eagle's name and LinkedIn account.

WHEREFORE, Plaintiff Linda Eagle demands the entry of judgment in her favor and against Defendants, injunctive relief in the form of an order requiring Defendant to cease and desist from using Dr. Eagle's LinkedIn account, actual damages, reasonable attorney fees, interest, and such other relief as the Court deems just.

## COUNT VI
## (MISAPPROPRIATION OF PUBLICITY)

101.  Each of the preceding paragraphs is incorporated herein by reference.

102.  Defendants are misappropriating the commercial value of Dr. Eagle's identity by stealing her LinkedIn account and by using her name and LinkedIn profile without her consent.

103.  The use of Dr. Eagle's name and LinkedIn account is solely designed for the commercial advantage of Edcomm.

104.  The use of Dr. Eagle's name and LinkedIn account is designed to suggest that Dr. Eagle remains related to, connected with, or identified with those services.

105.  The misappropriation of Dr. Eagle's name and LinkedIn account caused Dr. Eagle to suffer damages.

106.  Those damages include, but are not limited to, the costs she expended in attempting to recover her LinkedIn account, damages for the diminution of the fair market value of her name, damages for the loss of good will associated with her name, and damages for the value that use of her name brought to Defendants' promotion of Edcomm; these damages include the amount which Dr. Eagle's name was deemed to have been worth to Defendant and the diminution of value of Dr. Eagle's name in connection with her future commercial pursuits.

107.  Plaintiff also seeks injunctive relief in the form of an order requiring Defendants to cease and desist from using Dr. Eagle's name and LinkedIn account.

WHEREFORE, Plaintiff Linda Eagle demands the entry of judgment in her favor and against Defendants, injunctive relief in the form of an order requiring Defendant to cease and desist from using Dr. Eagle's LinkedIn account, actual damages, reasonable attorney fees, interest, and such other relief as the Court deems just.

## COUNT VII
## (IDENTITY THEFT, 42 PA. CONS. STAT. § 8315)

108.    Each of the preceding paragraphs is incorporated herein by reference.

109.    42 Pa. Cons. Stat. § 8315 provides, in relevant part:

> In a civil action based on identity theft as defined in 18 Pa.C.S.
> § 4120 (relating to identity theft), a court of competent jurisdiction
> may award damages . . .

110.    18 Pa. Cons. Stat. § 4120 provides, in turn:

> A person commits the offense of identity theft of another person if
> he possesses or uses, through any means, identifying information
> of another person without the consent of that other person to
> further any unlawful purpose.

111.    As described above, Defendants have misappropriated Dr. Eagle's name and LinkedIn account and are using identifying information about Dr. Eagle, including her name, her honors and awards, her recommendations, and her connections, on LinkedIn.

112.    Defendants misappropriated and are using Dr. Eagle's LinkedIn account and the information therein without Dr. Eagle's consent or permission from her authorized representative.

113.    Defendants are using Dr. Eagle's LinkedIn account and the information therein for the unlawful purposes set out above, including the misappropriation of Dr. Eagle's LinkedIn account.

114.    The theft of Dr. Eagle's identity on LinkedIn has caused Dr. Eagle damages in an amount greater than $500, including loss of money, damage to her reputation, and damage to her property.

115.    Those damages include, but are not limited to, the costs she expended in attempting to recover her LinkedIn account, damages for the diminution of the fair market value of her name, damages for the loss of good will associated with her name, and damages for the value that use of her name brought to Defendants' promotion of Edcomm; these damages include the amount which Dr. Eagle's name was deemed to have been worth to Defendant and the diminution of value of Dr. Eagle's name in connection with her future commercial pursuits.

WHEREFORE, Plaintiff Linda Eagle demands the entry of judgment in her favor and against Defendants, injunctive relief in the form of an order requiring Defendant to cease and desist from using Dr. Eagle's LinkedIn account, compensatory damages, trebled damages, reasonable attorney fees, interest, and such other relief as the Court deems just.

### COUNT VIII
### (CONVERSION)

116.    Each of the preceding paragraphs is incorporated herein by reference.

117.    Pursuant to the LinkedIn user agreement, a binding contract between Dr. Eagle and LinkedIn, Dr. Eagle owns the information she provided to LinkedIn, which constitutes her LinkedIn profile.

118.    Also pursuant to the LinkedIn user agreement, Dr. Eagle may maintain only one LinkedIn account at any given time.

119.    By stealing Dr. Engle's LinkedIn account, Defendants have deprived Dr. Eagle of her right in, or use or possession of, not only her LinkedIn account, but any LinkedIn account.

120.    Defendants appropriated and are using Dr. Eagle's LinkedIn account without Dr. Eagle's consent or permission from her authorized representative.

121.    In appropriating and using Dr. Eagle's LinkedIn account, Defendants acted without privilege, justification, or excuse.

122.    As a result, Dr. Eagle has suffered damages including but not limited to damages in the amount of the fair market value of her LinkedIn account, damages for the diminution of the fair market value of her name, damages for the loss of good will associated with her name, and damages for the value that use of her name brought to Defendants' promotion of Edcomm; these damages include the amount which Dr. Eagle's name was deemed to have been worth to Defendant and the diminution of value of Dr. Eagle's name in connection with her future commercial pursuits.

WHEREFORE, Plaintiff Linda Eagle demands the entry of judgment in her favor and against Defendants, return of the property converted, namely, her LinkedIn account, compensatory damages, punitive damages, reasonable attorney fees, interest, and such other relief as the Court deems just.

### COUNT IX
### (TORTIOUS INTERFERENCE WITH CONTRACT)

123.    Each of the preceding paragraphs is incorporated herein by reference.

124.    At all relevant times, Dr. Engle and LinkedIn were parties to LinkedIn's user agreement, a contract.

125.    Defendants took purposeful action, namely, misappropriating Dr. Eagle's LinkedIn account, specifically intended to harm the contractual relationship between Dr. Eagle and LinkedIn.

126.    Defendants appropriated and are using Dr. Eagle's LinkedIn account without Dr. Eagle's consent or permission from her authorized representative.

127.    In misappropriating and using Dr. Eagle's LinkedIn account, Defendants deprived Dr. Eagle of the benefits of her contract with LinkedIn.

128.    In misappropriating and using Dr. Eagle's LinkedIn account, Defendants acted without privilege, justification, or excuse.

129.    As a result, Dr. Eagle has suffered damages including but not limited to damages and losses resulting from Defendants' misappropriation of her name and LinkedIn account, including, but not limited to, damages for the diminution of the fair market value of her name, damages for the loss of good will associated with her name, and damages for the value that use of her name brought to Defendants' promotion of Edcomm; said damages include the amount which her name was deemed to have been worth to Defendant and the diminution of value of her name in connection with her future commercial pursuits.

WHEREFORE, Plaintiff Linda Eagle demands the entry of judgment in her favor and against Defendants, injunctive relief in the form of an order requiring Defendant to cease and desist from using Dr. Eagle's LinkedIn account, compensatory damages, punitive damages, reasonable attorney fees, interest, and such other relief as the Court deems just.

## COUNT X
### (CIVIL CONSPIRACY)

130.    Each of the preceding paragraphs is incorporated herein by reference.

131.    At all relevant times, Defendants conspired to commit unlawful acts, including but not limited to the unauthorized access to, use of, and misappropriation of Dr. Eagle's LinkedIn account.

132.    In accessing and using Dr. Eagle's LinkedIn account without authorization, Defendants acted with the common purpose of misappropriating the LinkedIn accounts of Dr. Eagle and Mr. Brody.

133.    In furtherance of their common purpose, Defendants committed overt acts, including the series of acts set out in paragraphs 35 through 44, above.

134.    As a result of Defendants' conspiracy to commit the unlawful acts, Defendants knew or should have known that the natural consequence of those unlawful acts would result in the misappropriation of Dr. Eagle's LinkedIn account and damages to Dr. Eagle.

135.    As a result of Defendants' conspiracy, Dr. Eagle has suffered -- and continues to suffer -- damages including but not limited to the costs she expended in attempting to recover her LinkedIn account, damages for the diminution of the fair market value of her name, damages for the loss of good will associated with her name, and damages for the value that use of her name brought to Defendants' promotion of Edcomm; these damages include the amount which Dr. Eagle's name was deemed to have been worth to Defendant and the diminution of value of Dr. Eagle's name in connection with her future commercial pursuits.

WHEREFORE, Plaintiff Linda Eagle demands the entry of judgment in her favor and against Defendants, injunctive relief in the form of an order requiring Defendant to cease and desist from using Dr. Eagle's LinkedIn account, compensatory damages, punitive damages, reasonable attorney fees, interest, and such other relief as the Court deems just.

## COUNT XI
## (CIVIL AIDING AND ABETTING)

136.    Each of the preceding paragraphs is incorporated herein by reference.

137.   Although only one, or fewer than all, of Defendants may have taken the physical actions necessary to access and misappropriate Dr. Eagle's LinkedIn account, all Defendants are liable for the harm caused by those actions.

138.   Upon information and belief, each Defendant provided substantial assistance and/or encouragement to the Defendant or Defendants who took the physical actions necessary to access and misappropriate Dr. Eagle's LinkedIn account by, among other things, suggesting that Dr. Eagle's LinkedIn account be accessed and misappropriated; providing Dr. Eagle's LinkedIn account for that purpose; providing Ms. Morgan's photograph for Dr. Eagle's LinkedIn account; and/or suggesting, discussing, or drafting the changes to make to Dr. Eagle's LinkedIn account.

139.   On information and belief, each Defendant took these actions knowing that accessing and misappropriating Dr. Eagle's LinkedIn account was wrongful.

140.   Each Defendant's own conduct, separately considered, constitutes a breach of duty to Dr. Eagle.

141.   As a result of Defendants' substantial assistance and/or encouragement in accessing and misappropriating Dr. Eagle's LinkedIn account, Dr. Eagle has suffered -- and continues to suffer -- damages including but not limited to the costs she expended in attempting to recover her LinkedIn account, damages for the diminution of the fair market value of her name, damages for the loss of good will associated with her name, and damages for the value that use of her name brought to Defendants' promotion of Edcomm; these damages include the amount which Dr. Eagle's name was deemed to have been worth to Defendant and the diminution of value of Dr. Eagle's name in connection with her future commercial pursuits.

WHEREFORE, Plaintiff Linda Eagle demands the entry of judgment in her favor and against Defendants, injunctive relief in the form of an order requiring Defendant to cease and desist from using Dr. Eagle's LinkedIn account, compensatory damages, punitive damages, reasonable attorney fees, interest, and such other relief as the Court deems just.

HANGLEY ARONCHICK SEGAL & PUDLIN

By: _____

William T. Hangley
Michael Lieberman
Sharon F. McKee
Rebecca L. Santoro
One Logan Square, 27th Floor
Philadelphia, Pennsylvania 19103-6933
(215) 568-6200 (telephone)
(215) 568-0300 (facsimile)

Dated:  July 1, 2011          *Counsel for Plaintiff Linda Eagle*