## UNITES STATES DISTRICT COURT
### EASTERN DISTRICT OF PENNSYLVANIA

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -    X

LINDA EAGLE,                                                       :

        Plaintiff/Counterclaim Defendant,          :     Civil Action No. 2:11-cv-04303-RB

            v.                                          :

SANDI MORGAN, HAITHAM SAEAD, JOSEPH          :
MELLACI, ELIZABETH SWEENEY, LISA
ARNSPERGER, QAMAR ZAMAN, and EDCOMM,         :
INC.,
                                                                  :
        Defendants/Counterclaimants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -    :
                                                                  X

## MEMORANDUM OF LAW IN SUPPORT OF DR. LINDA EAGLE'S MOTION TO DISMISS EDCOMM'S COUNTERCLAIMS ON THE PLEADINGS PURSUANT TO RULE 12(C)

VANDENBERG & FELIU LLP
60 East 42nd Street, 51st Floor
New York, NY 10165

and

ROSENTHAL LURIE LLC
486 Thomas Jones Way, Suite 210
Exton, PA 19341

Plaintiff/counterclaim defendant Linda Eagle ("Dr. Eagle") respectfully submits the following memorandum of law in support of her motion for judgment on the pleadings with respect to Defendant Edcomm, Inc.'s ("Edcomm") counterclaims.

## PRELIMINARY STATEMENT

Edcomm's counterclaims must be dismissed as insufficient on the face of the pleadings. Edcomm asserts eight counterclaims, but none are a plausible claim upon which relief could be granted. Edcomm makes what appears to be an unprecedented argument that a company could own the intangible relationship between a former employee and every professional, familial, or personal contact who became the former employee's "connection" on LinkedIn. As explained on LinkedIn's website, a connection is a person who trusts you enough to share content that she or he created. In other words, Edcomm claims some unique right to bar Dr. Eagle from accessing content created by others – a right that does not exist. Edcomm's claims also violate LinkedIn's user agreement, which explicitly states that the user owns the content. Moreover, Edcomm could hardly "own" Dr. Eagle's 3000+ connections, which include her daughter-in-law, college classmates, friends, and colleagues from prior employers, as well as some people with whom she did business while at Edcomm. Because the LinkedIn account and Dr. Eagle's ability to share information with her connections belong to her, there could be no claim that she converted or misappropriated this information or that she violated a statute aimed at stopping computer hacking, the Computer Fraud and Abuse Act ("CFAA").

Edcomm has also sued Dr. Eagle over her ongoing use of her individual cell phone number (the "Cell Phone Number"), a number she acquired personally many years ago and for which she now pays for cell phone service. Dr. Eagle has used this number for business and personal purposes for many years, with Edcomm's knowledge and consent when she was

Edcomm's President. Not only can she lawfully continue to use the Cell Phone Number, at her own expense, after her termination, but Edcomm admits in its Counterclaim that it "disabled" service for it. Counterclaim, ¶ 16. Hence, Edcomm has waived and disclaimed any interest in using the Cell Phone Number. For these reasons, Edcomm has no plausible claim that Dr. Eagle converted or misappropriated the Cell Phone Number or that she interfered with a contract between AT&T and Edcomm. Similarly, by walking into an AT&T store, showing her driver's license, and activating the Cell Phone Number on a new cell phone, Dr. Eagle did not violate the CFAA.

Accordingly, Dr. Eagle is entitled to judgment on the pleadings under Federal Rule of Civil Procedure 12(c).

## STATEMENT OF FACTS

In about 1987, Dr. Linda Eagle and non-party Clifford Brody founded Edcomm, a company dedicated to training bankers and other financial professionals. Complaint, ¶ 12. Until recently, Dr. Eagle served as Edcomm's President and Mr. Brody was the CEO. Id. For over 20 years, Dr. Eagle has been very prominent in the field of banking training through networking, including speaking at conference, publishing, and meeting with banking leaders. Id., ¶ 14.

In or about 2008, Dr. Eagle created an account on LinkedIn, the world's largest professional networking site. Id., ¶ 15-16. When she created an account, she entered into a user agreement with LinkedIn. Id., ¶ 20 and Exhibit B. LinkedIn makes users promise that they are individually bound by the terms of use even if they are using a LinkedIn account on behalf of their employers. Id., Exhibit B, ¶ B. After an account holder establishes a "connection" with someone, one can view the user's profile information and can send an email to him or her. Id., Exhibit C. Under the LinkedIn user agreement, all users own the information they have created

on their LinkedIn profiles.  Complaint, ¶ 25 and Exhibit B, ¶ 2.B.   Dr. Eagle used her account

for Edcomm business and personal reasons and made "connections" with over 3,000 people,

including family, friends, and former colleagues, as well as clients.  Id., ¶¶ 16, 22; Reply ¶ 79

and Exhibit C.

On June 20, 2011, Dr. Eagle, Mr. Brody, and the third former shareholder, David

Shapp, were involuntarily terminated by defendant Haitham Saead.  Id., ¶ 28, Answer, ¶ 28.

This termination came several months after a Term Sheet was signed, by which Sawabeh

Information Services Company ("SISCOM") contends it became the owner of the shares of

Edcomm.  Complaint, ¶¶ 2, 27, Answer ¶¶ 2, 27.  Dr. Eagle has alleged that on or about the day

of her termination, individuals at Edcomm hijacked her LinkedIn account and passed off Dr.

Eagle's honors, awards, recommendations, and connections as belonging to defendant Sandi

Morgan, who became Edcomm's interim CEO.  Complaint, ¶¶ 35-55 and Exhibits F and G.

In spite of the documentation evidence, i.e., screenshots, attached to the

Complaint which demonstrate  Defendants' wrongdoing, Edcomm has denied these allegations.

Complaint, Exh. F; Answer, ¶¶ 35-55.  However, Edcomm has admitted that it seized control

over the LinkedIn account because it admits that Dr. Eagle "regained" control over her own

LinkedIn account after she filed her Complaint.  Counterclaims, ¶ 8.  In its Counterclaims,

Edcomm claims that Dr. Eagle "converted" or "misappropriated" her connections associated

with her LinkedIn account.  Counterclaims, ¶¶ 45, 48.  In essence, Edcomm contends that it

"owns" Dr. Eagle's connections.   Edcomm's Counterclaims do not refer to the LinkedIn user

agreement; rather, Edcomm has alleged it had an informal and unwritten "policy" that certain

employees were given directions to maintain a uniform style for portion of some content of their

LinkedIn profiles.  In fact, user profiles were not consistent.  Reply, ¶ 76 and Exhibit B.

Furthermore, over the last few years, former Edcomm employees have retained ownership and control over their LinkedIn accounts after they left, evidenced by LinkedIn profiles of former Edcomm employees. Reply, ¶ 75 and Exhibit A.

In addition to the dispute over the LinkedIn connections, Edcomm has alleged that it owns Dr. Eagle's Cell Phone Number. Dr. Eagle used this number for at least a decade for business and personal reasons. Reply, ¶ 79. In the months that preceded her termination, Edcomm paid for service for this number. Counterclaim, ¶ 11. However, after terminating Dr. Eagle, Edcomm "disabled" service for her Cell Phone Number. Id., ¶ 16. Shortly thereafter, Dr. Eagle walked into an AT&T Wireless store, showed her driver's license, and had the Cell Phone Number activated on a different cell phone. Reply, ¶ 88.

Finally, Edcomm claims that Dr. Eagle has refused to return a laptop computer which was purchased for her use years ago while she was President of the company. Counterclaim, ¶¶ 23-24; Reply ¶ 83. Edcomm makes the implausible claim that Dr. Eagle took the laptop with her even though she had been escorted to her car and left her personal effects in the office on the day of her sudden termination. Counterclaim, ¶ 25.

## ARGUMENT

Edcomm's counterclaims cannot surpass a motion to dismiss on the pleadings under Rule 12(c). A motion for judgment on the pleadings is governed by the same plausibility analysis required for a motion to dismiss under Rule 12(b)(6). *Huntington Nat. Bank v. Ray Anthony Int'l LLC*, 210-CV-743, 2010 WL 3842224 at *1 (W.D. Pa. Sept. 27, 2010). As the Third Circuit has noted, a motion for judgment on the pleadings, like a motion to dismiss, will be granted if the plaintiff has not articulated enough facts to "raise a right to relief above the speculative level." *Bangura v. City of Philadelphia*, 338 Fed. App'x. 261, 264 (3d Cir. 2009).

The only difference between a motion to dismiss and a motion for judgment on the pleadings is that the Court reviews not only the complaint, but also the answer and written instruments attached to the pleadings. *Pumphrey v. Smith*, 1:09-CV-233, 2010 WL 4983675 at *1 (W.D. Pa. Dec. 2, 2010) (citing 2 James Wm. Moore et al., Moore's Federal Practice-Civil ¶ 12.38 (2010)).

Here, the claims cannot survive the now-familiar "plausibility" analysis required under *Twombly* and *Iqual.* The Third Circuit has recognized that such an analysis requires a two-part test. First, the factual and legal elements of a claim should be separated, accepting all of the complaint's well-pleaded facts as true, but disregarding any legal conclusions. Then, a District Court must determine whether the facts alleged are sufficient to show that the plaintiff has a "plausible claim for relief." *Fowler v. UPMC Shadyside,* 578 F.3d 203, 210-11 (3d Cir. 2009) (citing *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1955 (2009)). For the reasons set forth below, Edcomm has not asserted any plausible counterclaims against Dr. Eagle.

I.    **Dr. Eagle Is Entitled to Judgment on the Pleadings on Edcomm's Statutory Claims under the Computer Fraud and Abuse Act and the Pennsylvania Uniform Trade Secrets Act**

A.    **Edcomm Has Not Stated a Claim Under § 1030(a)(2)(C) or § 1030(a)(5)(C) of the Computer Fraud and Abuse Act**

Defendant's CFAA claims, Counterclaim Counts One and Two, fail because they do not allege facts that could establish that: (1) Dr. Eagle accessed a protected computer "without authorization" or (2) Edcomm suffered cognizable damages, as opposed to mere allegations that data (the Cell Phone Number) was misappropriated, which would not constitute permissible damages under the CFAA.

1.    **Edcomm fails to allege computer access "without authorization"**

The Counterclaims do not allege facts which establish unauthorized access to a protected computer. Rather, Edcomm's two identical CFAA claims allege that "[t]hrough Dr.

Eagle's misrepresentation of her affiliation with Edcomm or use of its information without authorization, Dr. Eagle gained access to Edcomm's AT&T account and misappropriated Edcomm's Number." Counterclaims ¶ 32, 39.

Courts have interpreted the phrase "without authorization" in 18 U.S.C. § 1030(a)(2)(C) and § 1030(a)(5)(C) to refer to conduct which is tantamount to trespass. *See Brett Senior & Associates, P.C. v. Fitzgerald*, CIV.A. 06-1412, 2007 WL 2043377 at *3 (E.D. Pa. July 13, 2007) (employee's access to employer's computer on his last day on the job but after resignation was not unauthorized because he had permission to use the computer). Significantly, a plaintiff does not adequately allege access "without authorization" by a mere allegation that a defendant accessed a computer intending to misuse information. *See Integrated Waste Solutions, Inc. v. Goverdhanam*, CIV.A. 10-2155, 2010 WL 4910176 at *8 (E.D. Pa. Nov. 30, 2010) (granting in part motion to dismiss to the extent plaintiff alleged defendant violated CFAA by misuse of data); *Bro-Tech Corp. v. Thermax, Inc.*, 651 F. Supp. 2d 378, 407 (E.D. Pa. 2009) ("[A]n employee who may access a computer by the terms of his employment is 'authorized' to use that computer for purposes of [the] CFAA even if his purpose in doing so is to misuse or misappropriate the employer's information.").

Here, Edcomm has alleged mere misappropriation of data, Dr. Eagle's Cell Phone Number. As a threshold matter, walking into an AT&T store and having a clerk move a cell phone number to a new phone onto a different account does not constitute or involve any computer access at all by Dr. Eagle, much less unauthorized access. For this reason alone, these claims can be denied. Furthermore, because AT&T owned the alleged "protected computer," only AT&T could grant or deny access. AT&T allowed Dr. Eagle to move her cell phone number information to a new phone. Thus, Dr. Eagle could not possibly have unlawfully

accessed or trespassed upon AT&T's computers when she transferred the Cell Phone Number at an AT&T store by showing her driver's license.  Additionally, because Edcomm alleged that it disabled service for the number, which Dr. Eagle has used for personal purposes for years, Dr. Eagle did not need its permission to transfer the number.  For these reasons, the CFAA claims fail.

### 2.  Edcomm fails to allege  loss or damage recoverable under the CFAA

Edcomm has not alleged cognizable damages, which is an essential part of any CFAA claim.  While the CFAA is a broad criminal statute, its civil remedy provision, 18 U.S.C. § 1030(g), only proscribes certain conduct.  Only two types of prohibited conduct would be conceivably relevant here, either: "(I) loss to 1 or more persons during any 1-year period…aggregating at least $5,000 in value" or "(VI) damage affecting 10 or more protected computers during any 1-year period".  *Id.* § 1030 (c)(4)(A)(i).  The CFAA defines "damage" as "any impairment to the integrity or availability of data, a program, a system, or information." *Id.* § 1030(e)(8).  Similarly, the CFAA defines "loss" as "[a]ny reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." *Id.* § 1030(e)(11).

Significantly, allegations of misuse or misappropriation of data do <u>not</u> give rise to loss or damages recoverable under the CFAA.  *Consulting Prof'l Res., Inc. v. Concise Technologies LLC,* Civ. A. 09-1201, 2010 WL 1337723 at *7 (W.D. Pa. Mar. 9, 2010) (dismissing CFAA claim for failure to allege proper damages, finding that "misuse of confidential information retrieved from a company's computers does not impair the integrity or

availability of data or information"); *Clinton Plumbing & Heating of Trenton, Inc. v. Ciaccio,*

Civ. 09-2751, 2010 WL 4224473 at *7 (E.D. Pa. Oct. 22, 2010) (dismissing CFAA claim when

"none of the[] claims allege[d] loss related to computer impairment or interruption of service").

      Here, Edcomm fails to allege "loss" or "damages" to the <u>integrity</u> of AT&T's data

or loss of AT&T service.  Edcomm has alleged "actual and/or consequential damages including

loss of business relations" (Counterclaims ¶¶ 32, 40) but that plainly refers to alleged damages

from not being able to use the Cell Phone Number, not damages to an AT&T account.  Read

most charitably to Edcomm, its damages allegations are that it has not been able to attract

potential customers who call or text Dr. Eagle's Cell Phone Number, which would not be

cognizable damages under the CFAA.  Thus, Edcomm's CFAA claims must be dismissed.

### B. Edcomm Has Not Stated a Claim Under the Pennsylvania Uniform Trade Secrets Act ("PUTSA")

      Edcomm's trade secret claim is deficient because none of the information alleged

to be a trade secret – "Edcomm's AT&T account information, customer contacts, and instructor

identities and contacts" – constitutes a trade secret at all, much less an Edcomm trade secret.

Counterclaim, ¶ 62.

      The PUTSA defines a "trade secret" as "[i]nformation, including a formula,

drawing, pattern, compilation including a customer list, program, device, method, technique or

process that (1) derives independent economic value, actual or potential, from not being

generally known to, and not being readily ascertainable by proper means by, other persons who

can obtain economic value from its disclosure or use[; and] (2)[i]s the subject of efforts that are

reasonable under the circumstances to maintain its secrecy." 12 Pa. C.S.A. § 5302.  Customer

lists and confidential business information cannot be trade secrets if they can be ascertained

through some independent source. *Youtie v. Macy's Retail Holding, Inc.,* 653 F. Supp. 2d 612, 621 (E.D. Pa. 2009).

Here, Edcomm's website discloses the identity of more than 1,000 clients, most of whom are well-known banks. Reply, ¶¶ 89-90 and Exhibit D.  For this reason, Edcomm's "customer information" cannot constitute a trade secret.  Likewise, the identity of Edcomm's instructors is publicly available on their LinkedIn profiles.  Reply, ¶¶ 92 and Exhibit E.  Hence, this information too cannot constitute a trade secret.  Finally, there is no independent economic value to Edcomm arising from "Edcomm's AT&T account information."  Edcomm is in the business of training bankers, not selling telecommunications services.  To the extent that the AT&T account contains Dr. Eagle's own personal information, such as her Social Security number, address or driver's license number, this is clearly not Edcomm's trade secret. Nor is Edcomm's government-issued EIN a trade secret. Accordingly, Edcomm alleges no facts which could support any trade secret claim.

## II.  Dr. Eagle Is Entitled to Judgment on the Pleadings on Edcomm's Common Law Claims

Just as Edcomm fails to allege basic elements of its statutory claims, its common law claims also fail to state a claim upon which relief may be granted.  None of these claims for conversion, misappropriation, unfair competition, tortious interference with an AT&T contract, and tortious interference with prospective contractual relations can survive a motion directed to the sufficiency of the pleadings.

### A.  Edcomm's Conversion Claim Fails as a Matter of Law

Edcomm's conversion claim is deficient because it alleges conversion of intangible property or other property to which it does not have a superior claim of possession. Under Pennsylvania law, conversion is "the deprivation of another's right of property in, or use

or possession of, a chattel, or other interference therewith, without the owner's consent and without lawful justification." *Stevenson v. Economy Bank of Ambridge,* 197 A.2d 721, 726 (Pa. 1964).  To state a claim for conversion, plaintiff must allege facts to demonstrate its ownership or right to immediate possession of the chattel.  *Lynn Electronics v. Automation Mach. & Dev. Corp.*, CIV.A. 86-2301, 1988 WL 62161 at *1 (E.D. Pa. June 15, 1988); *see also U.S. Claims, Inc. v. Flomenhaft,* 519 F. Supp. 2d 532, 536 (E.D. Pa. 2007).  Furthermore, a plaintiff's interest or right in the property must be superior to the defendant's.  *U.S. Claims,* 519 F. Supp. 2d at 536.

Significantly, federal courts in this District have refused to recognize conversion claims over various types of intangible property.  *Vavro v. Albers,* 2:05CV321, 2006 WL 2547350 at *14-15 (W.D. Pa. Aug. 31, 2006) (denying conversion claim alleged over electronic medical information); *see also Apparel Bus. Sys., LLC v. Tom James Co.,* CIV.A.06-1092, 2008 WL 858754 at *18-19 (E.D. Pa. Mar. 28, 2008) (software not subject to conversion claim); *DirectTV v. Frick,* 2004 WL 438663 at *3 (E.D. Pa. Mar. 2, 2004) (satellite signals constitute intangible property which cannot be converted under Pennsylvania law); *Famology.com, Inc. v. Perot Sys. Corp.,* 158 F. Supp. 2d 589, 591 (E.D. Pa. 2001) (Internet domain names do not constitute tangible property which can be converted).  Under Pennsylvania law, only tangible property can be the subject of a conversion claim.

In its Counterclaims, Edcomm alleges that Dr. Eagle converted her Cell Phone Number, her LinkedIn profile account connections, and a company laptop. Counterclaim ¶ 53. Neither her Cell Phone Number nor her LinkedIn account connections constitute tangible property that could be subject to a conversion claim.  Moreover, Edcomm does not own either the LinkedIn connections or the Cell Phone Number.

11

As for the laptop, which Edcomm describes as "a laptop personal computer issued by Edcomm," Defendant does not allege ownership or right to possess a computer used by Dr. Eagle for business and personal purposes. *See* Counterclaims ¶ 23.[1]

Consequently, Defendant's counterclaim for conversion must be dismissed in its entirety.

## B. Edcomm's Misappropriation Claim Does Not State a Claim upon Which Relief Could Be Granted

Defendant fails to state a cognizable claim for misappropriation of trade secrets or misappropriation of other confidential information other than a trade secret. Edcomm alleges that Dr. Eagle "intentionally and through wrongful means misappropriated" her own Cell Phone Number and her LinkedIn account connections. Counterclaims ¶ 45. These allegations are legally insufficient.

A plaintiff alleging misappropriation of trade secrets under Pennsylvania law must show: "(1) the existence of a trade secret; (2) communication of the trade secret pursuant to a confidential relationship; (3) use of the trade secret, in violation of that confidence; and (4) harm to the plaintiff." *Moore v. Kulicke & Soffa Indus., Inc.,* 318 F.3d 561, 566 (3d Cir. 2003). The subject matter of a trade secret must not be generally known, such as customer names which can be known by observation or other means. *Renee Beauty Salons, Inc. v. Blose-Venable,* 438 Pa. Super. 601, 652 A.2d 1345, 1349 (1995) (citations omitted); *Pestco, Inc. v. Associated Products, Inc.,* 2005 PA Super 276, 880 A.2d 700, 707 (Pa. Super. Ct. 2005).

Edcomm fails to state a claim for misappropriation of trade secrets.  Neither Dr. Eagle's Cell Phone Number nor her LinkedIn account connections are trade secrets. Nor could Edcomm plausibly allege that Dr. Eagle learned any trade secret relating to how the company

---

[1]     Dr. Eagle was the founder and President of the company when she bought a laptop computer for business and personal purposes.

uses cell phones to communicate or LinkedIn to network. Such information is generally known and ascertainable.

In addition to trade secret misappropriation, the Pennsylvania Superior Court has held that a plaintiff may state a claim for misappropriation by alleging facts which show that: (1) the plaintiff "has made a substantial investment of time, effort, and money into creating the thing misappropriated such that the court can characterize the 'thing' as a kind of property right," (2) the defendant "has appropriated the 'thing' at little or no cost, such that the court can characterize defendant's actions as 'reaping where it has not sown,'" and (3) the defendant "has injured the plaintiff by the misappropriation." *Sorbee Int'l Ltd. v. Chubb Custom Ins. Co.,* 1999 Pa. Super. 178, 182, 735 A.2d 712, 712 (1999); *see also Blackmon v. Iverson,* 324 F. Supp. 2d 602, 609-10 (E.D. Pa. 2003) (dismissing complaint).

Edcomm fails to allege facts that would show that Edcomm made "a substantial investment of time, effort, and money into creating" Dr. Eagle's Cell Phone Number or LinkedIn account connections.  As an initial matter, Edcomm did not "create" Dr. Eagle's cell phone number or her contacts' profile information.  In the U.S., telephone numbers are assigned and become available by the North American Numbering Plan Administration (NANP). Likewise, the terms of service governing Dr. Eagle's LinkedIn account expressly provides that each individual profile is owned by the account holder, here Dr. Eagle. Thus, Dr. Eagle owns her LinkedIn account and contact information created by people in her network belong to her friends, relatives, and colleagues.

Consequently, Edcomm's "misappropriation" claim must be dismissed.

### C. Edcomm's Unfair Competition Claim Must Be Dismissed

Edcomm has not stated a claim for unfair competition.  Federal courts applying
Pennsylvania law have used the Restatement (Third) of Unfair Competition for guidance on what
competitive conduct is tortious. *Bro-Tech Corp. V. Thermax*, 651 F. Supp. 2d 378, 417-18 (E.D.
Pa. 2009).  Section 1(a) of the Restatement prohibits "acts or practices of the actor determined to
be actionable as an unfair method of competition," which courts have interpreted to require
wrongful means.  *See Synthes (USA) v. Globus Med., Inc.*, CIV.A. 04-1235, 2007 WL 2043184
at *9-10 (E.D. Pa. July 12, 2007).  A party uses wrongful means when a competitor does
something that is independently actionable. *See PennPac Int'l, Inc. v. Rotonics Mfg., Inc.*, Civ. A.
99-CV-2890, 2001 WL 569264 at *13 (E.D. Pa. May 25, 2001); *see also Nat'l Data Payment
Sys., Inc. v. Meridian Bank*, 212 F.3d 849, 858 (3d Cir. 2000); *Restatement (Second) of Torts* §
768, cmt. e.

Here, the allegations that Dr. Eagle's has continued to use the Cell Phone Number
and LinkedIn account connections do not involve independently tortious conduct. As set forth
above, there are no viable claims stemming from these allegations. Edcomm cannot try to
bootstrap other deficient claims to support an unfair competition claim.  Moreover, Edcomm
fails to allege that Edcomm and Dr. Eagle were competitors when the events happened.

Thus, Edcomm's claim for unfair competition must be dismissed.

### D. Plaintiff Is Entitled to Judgment on the Pleadings on Edcomm's Claim That Dr. Eagle Interfered with Edcomm's Contract with AT&T

Edcomm's contrived claim that Dr. Eagle tortiously interfered with its contract
with AT&T must be summarily dismissed. To state a claim for tortious interference with
contract, a party must allege: (1) an existing contractual relationship; (2) the purpose or intent to
harm the plaintiff by interfering with the relationship; (3) the absence of privilege or justification

on the part of the defendant; and (4) actual damage resulting from the defendant's conduct.
*Alpart v. Gen. Land Partners, Inc.,* 574 F. Supp. 2d 491, 505 (E.D. Pa. 2008); *Kelly–Springfield Tire Co. v. D'Ambro,* 408 Pa. Super. 301, 596 A.2d 867, 871 (1991).

Edcomm has not pleaded facts sufficiently alleging that Dr. Eagle intended to harm a contractual relationship or the absence of justification. Furthermore, although Dr. Eagle admits that she was aware that AT&T provided cell phone service to Edcomm,  Edcomm does not allege, and could not plausibly allege, that Dr. Eagle interfered with this contract for the "specific purpose" of harming Edcomm's contract with AT&T.  Nor has Edcomm's contract been harmed. Dr. Eagle is paying for her own cell phone service after Edcomm abandoned any interest in keeping the number.  This telephone number is not intrinsically tied to Edcomm's contract with AT&T.  Indeed, cell phone numbers are portable, even to different telecommunications providers. *See, e.g.,* 47 C.F.R. 52.23 (2010) (wireless number portability regulations).   Finally, Edcomm could not show damages to the contractual relationship with AT&T.

Based on the foregoing, the court must dismiss Edcomm's claim for tortious interference with contract.

### E.  Dr. Eagle is Entitled to Judgment on the Pleadings on Edcomm's Claim that She Interfered with Edcomm's Prospective Business Relationships

Lastly, Edcomm's eighth and final counterclaim for tortious interference with prospective business relations must be dismissed.  To state such a claim, a party must allege plausible facts that show: (1) a prospective contractual relation; (2) the purpose or intent to harm the plaintiff by preventing the relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) actual damages. *Thompson Coal Co. v. Pike Coal Co.,* 488 Pa. 198, 208, 412 A.2d 466, 471 (1979); *Brunson Communications, Inc. v.*

*Arbitron, Inc.*, 239 F. Supp. 2d 550, 578 (E.D. Pa. 2002).  Furthermore, Pennsylvania law requires that there be an "objectively reasonable likelihood or probability" that the contemplated contract or business relations would have materialized absent the defendant's interference.  *U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia,* 898 F.2d 914, 925 (3d Cir. 1990) ("[T]he Pennsylvania Supreme Court has defined 'prospective contractual relation' as something less than a contract right, something more than a mere hope.").

Edcomm's claim fails because it has not identified any past, present or prospective Edcomm customer with whom it had a prospective contract. *See Foster v. UPMC S. Side Hosp.,* 2010 Pa. Super. 143 (Pa. Super. Ct. Aug. 6, 2010) (claim "wholly deficient because it does not provide a scintilla of information regarding the purported contractual relationships"). Furthermore, Edcomm has not pointed to a causal connection between Dr. Eagle's conduct and Edcomm's loss of a contract that otherwise would have signed.

Thus, Edcomm's claim for tortious interference with prospective business relationships must be dismissed.

## CONCLUSION

For the foregoing reasons, Dr. Eagle's motion to dismiss the Counterclaims should be granted in all respects.  The Counterclaims should be denied with prejudice.


Dated: September 21, 2011


**VANDENBERG & FELIU LLP**
Attorneys for Plaintiff/Counterclaim
Defendant

By: _____
     Jeffrey E. Gross (JG 5200)
(admitted pro hac vice)
60 East 42nd St. 51st Floor
New York, NY 10165
(212) 763-6800


ROSENTHAL LURIE LLC
Attorneys for Plaintiff/Counterclaim
Defendant

486 Thomas Jones Way
Suite 210
Exton, PA 19341
(484) 693-0788