**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **LINDA EAGLE,**<br><br>      **Plaintiff,**<br><br>v.<br><br>**SANDI MORGAN, HAITHAM SAEAD, JOSEPH MELLACI, ELIZABETH SWEENEY, LISA ARNSPERGER, QAMAR ZAMAN, and EDCOMM, INC.,**<br><br>      **Defendants.** | Civil Action No. 11-4303(RB) |

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S**
**MOTION FOR JUDGMENT ON THE PLEADINGS**

 

**BUCHANAN INGERSOLL & ROONEY, PC**

Samantha L. Southall, Esq. (Pa. I.D. No. 80709)
samantha.southall@bipc.com
Two Liberty Place
50 S. 16th Street, Suite 3200
Philadelphia, PA 19102-2555
Telephone:  (215) 665-8700
Facsimile:  (215) 665-8760

Philip L. Hirschhorn (admitted *pro hac vice*)
philip.hirschhorn@bipc.com
1290 Avenue of the Americas, 30th Floor
New York, New York 10104
Telephone (212) 440-4400
Fax (212) 440-4401

*Counsel for Defendants/Counterclaim Plaintiff*

**TABLE OF CONTENTS**

**I.** INTRODUCTION .................................................................................................................. 1

**II.** FACTUAL BACKGROUND ............................................................................................... 2

**III.** LEGAL STANDARD ........................................................................................................ 3

**IV.** EDCOMM PROPERLY PLEADED THAT EAGLE VIOLATED THE CFAA BY ACCESSING PROTECTED COMPUTERS WITHOUT AUTHORIZATION CAUSING DAMAGE AND LOSS TO EDCOMM ........................................................................ 5

**V.** EDCOMM HAS PLEADED A TRADE SECRET CLAIM ...................................................... 7

**VI.** EDCOMM'S COMMON LAW CLAIMS ARE WELL PLEADED ........................................ 9

  **A.** Eagle has Converted the Number, the LinkedIn Account Connections and the Edcomm-issued Laptop ........................................................................................................ 9

  **B.** Eagle has Misappropriated the AT&T Number and LinkedIn Connections .................... 10

  **C.** Eagle's Unfair Competitive Use of Edcomm's Confidential Information Supports an Unfair Competition Claim ........................................................................................ 11

  **D.** Edcomm's Interference Claims Meet the Required Pleading Standards ......................... 12

   **1.** Eagle Tortiously Interfered with the AT&T Contract ................................................. 12

   **2.** Eagle Has Tortiously Interfered with Edcomm's Prospective Business Relations ...... 13

**VII.** CONCLUSION ................................................................................................................ 13

# **TABLE OF AUTHORITIES**

**Cases**

2001 WL 569264, *13 ................................................................................................................ 12
*Air Prods. and Chems., Inc. v. Inter-Chemical, Ltd.,* Civ. No. 03-6140, 2003 WL 22917491 (E.D. Pa. 2003) .......................................................................................................... 12
*Alpart v. Gen. Land Partners, Inc.*, 574 F.Supp.2d 491, 505 (E.D. Pa. 2008) ............................ 12
*Ashcroft v. Iqbal,* __ U.S. __, 129 S.Ct. 1937 (2009) ................................................................... 4
*Bell Atlantic Corp. v. Twombly,* 550 U.S. 554, 570 (2007) ......................................................... 4
*Blackmon v. Iverson*, 324 F.Supp.2d 602 (E.D.Pa. 2003) ......................................................... 10
*Brett Senior & Assocs. v. Fitzgerald,* 2007 WL 2043377 (E.D. Pa. 2007) .................................. 7
*Brinich v. Reading Co.,* 9 F.R.D. 420, 421 (E.D.Pa. 1949) ......................................................... 4
*Bro-Tech Corp. v. Thermax, Inc.,* 651 F.Supp.2d 378 (E.D. Pa. 2009) ....................................... 7
*Constitution Bank v. DiMarco*, 815 F.Supp. 154 (E.D.Pa. 1993) ................................................ 4
*Integrated Waste Solutions, Inc. v. Goverdhanam*, 2010 WL 4910176 (E.D.Pa. Nov. 30, 2010) . 6
*Nat'l Data Payment Sys., Inc. v. Meridian Bank*, 212 F.3d 849, 858 (3rd Cir. 2000) .................. 11
*PennPac Int's, Inc. v. Rotonics Mfg., Inc.*, Civ. A. 99-CV-2890, 2001 WL 569264 at *13 (E.D. Pa. May 25, 2001) ................................................................................................................ 11
*Pension Benefit Guar. Corp. v. White Consol. Indus. Inc.,* 998 F.3d 1192, 1196–97 (3d Cir.1993) ................................................................................................................................................ 4
*Rosenua v. Unifund Corp,* 539 F.3d 218, 221 (3d Cir. 2008) ....................................................... 4
*Sorbee Int'l Ltd. v. Chubb Custom Ins. Co.,* 735 A.2d 712, 716 (Pa. Super. 1999) .................... 10
*Stevenson v. Economy Bank of Ambridge*, 197 A.2d 721, 726 (Pa. 1964) ................................... 9
*Synthes (USA) v. Globus Medical, Inc.,* Civ. A. 04-1235, 2007 WL 2043184, *10 (E.D. Pa. Jul. 12, 2007) .............................................................................................................................. 12
*Twombly*, 550 U.S. at 570 ............................................................................................................ 4
*Westport Ins. Co. v. Hanft & Knight, P.C.*, 523 F.Supp.2d 444, 459-60 (M.D.Pa. 2007) ............ 10
*Youtie v. Macy's Retail Holding, Inc.*, 653 F.Supp.2d 612 (E.D. Pa. 2009) ................................. 8

**Statutes**

§1030(g) ........................................................................................................................................ 7
12 Pa. Cons. Stat. Ann. § 5302 ..................................................................................................... 8
18 U.S.C. § 1030(e)(2) .................................................................................................................. 5
Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030 ..................................................... 3
Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030(a)(2)(C) and (5)(C) ..................... 5
Pennsylvania's Uniform Trade Secrets Act ("PUTSA"), 12 Pa. Cons. Stat. Ann. § 5301 ............ 7
Rule 12(b)(6), Fed. R. Civ. P. ....................................................................................................... 4
Rule 12(c), Fed. R. Civ. P. ............................................................................................................ 3
Section 1030(a)(2)(C) .................................................................................................................... 5
Section 1030(a)(5)(C) .................................................................................................................... 5

**I.      INTRODUCTION**

Plaintiff Linda Eagle's ("Eagle") retaliatory, multi-claim action against her former employer, Edcomm, Inc. ("Edcomm"), and six of Edcomm's employees, is truly the making of a mountain out of a mole-hill - at least from the Eagle perspective. For a short time, Eagle was locked out of a LinkedIn account tied to her name. Then Edcomm, too, was blocked. Then only Edcomm was blocked, and Eagle had full access. With nothing at stake, Eagle nonetheless continues this action.

Edcomm, on the other hand, is still suffering from the many harms done it arising from Eagle's misconduct. By its counterclaims, Edcomm seeks to address some of these wrongs. The facts as pleaded by Edcomm set forth eight well-pleaded causes of action premised on three acts of misconduct by Eagle:

> 1.      Eagle's access, "without authorization," to AT&T's "protected computers" to obtain, and then alter, information regarding Edcomm telephone numbers to derive commercial benefit for Eagle. In the end, Eagle's access permitted her to obtain the cellular number Edcomm had used and provided to Eagle (the "Number").
>
> 2.      The misappropriation of Edcomm property in the form of proprietary information developed at company expense for company benefit and made part of a LinkedIn account (the "Account" or the "LinkedIn Account") under Linda Eagle's name. Under the very policies that Eagle and her fellow executives started, Eagle knew full well that her LinkedIn contacts belonged to Edcomm, were not personal, and had to be returned to Edcomm at the termination of her relationship with the company.
>
> 3.      The conversion of an Edcomm company laptop issued to Eagle (the "Laptop").

Each of these acts supports the causes of action pleaded by Edcomm.

## II.     FACTUAL BACKGROUND[1]

Plaintiff Eagle brought this action as a retaliatory measure after Edcomm terminated her and her two fellow former Edcomm shareholders and brought suit against Eagle in the Southern District of New York for securities fraud, common law fraud and other misrepresentation-related offenses arising from plaintiff's sale of her shares of Edcomm to a third party, Sawabeh Information Services Company ("SISCOM").[2]  Shortly after instituting this action, Eagle sought to transfer the New York Action to the Eastern District of Pennsylvania.  That motion was denied.

The underlying action here is based on Edcomm's policies and procedures following termination of employees – policies implemented by Eagle and her fellow former shareholders.  (¶¶ 1-4, 14, 17).  Among those policies was the recognition that the LinkedIn accounts[3] of employees belonged to Edcomm, as did the content.  (¶ 1-2).  Specifically, with respect to the Edcomm LinkedIn Account developed and maintained for Dr. Eagle, Edcomm personnel developed and maintained all connections and much of the content on the LinkedIn Account.[4]  (¶6).  Moreover, upon termination, Edcomm employees had the duty to transfer the LinkedIn accounts to Edcomm along with all content, including the connections.  (¶ 4).  While Eagle was

---

[1] All citations are to Defendant Edcomm's Counterclaims, Doc. 22 at 12, *et seq.,* and are designated by paragraph number ("¶ __") in this memorandum.
[2] *Sawabeh Information Services Company and Edcomm, Inc. v. Clifford Brody, Linda Eagle and David Shapp*, 11-civ-4164 (S.D.N.Y.)(SAS).  (The "New York Action").
[3] LinkedIn accounts are a computer-supported service provided in cooperation with LinkedIn Corporation.
[4] A LinkedIn "connection" is an agreed linkage between two accounts, e.g., between the LinkedIn Account and an instructor's account.

2

willing to impose that policy on departing employees, she had other thoughts when the same policy was directed at her.[5]

Eagle's retaliatory measures did not end with this action. Rather, not only did she violate state laws through conversion and misappropriation of the LinkedIn Account content, but she also violated Federal Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, as she took steps to begin competing with Edcomm and undermining Edcomm's future business contacts. Perhaps most egregious, Eagle gained access to AT&T's computers and Edcomm's data concerning its cellular telephone numbers, and she misrepresented her status as an employee of Edcomm and, without authorization – like an outside hacker – changed the ownership of the Number. (¶¶ 19-21). Eagle knew well that the Number had become a central feature of Edcomm's advertising and marketing materials. (¶ 17). By stealing this Number through unauthorized access to computers, Eagle has been able to compete unfairly with Edcomm.

In addition, Eagle removed the Laptop issued to her by Edcomm from the company's Fort Washington, Pennsylvania offices. (¶¶ 23-26). Again, Eagle's actions were taken without authorization. She has since refused to return the Laptop. (¶ 26).

For the reasons stated below and above, Eagle's motion for judgment on the pleadings should be denied.

### III.  LEGAL STANDARD

This Court should deny plaintiff Eagle's request to enter judgment on the pleadings pursuant to Rule 12(c), Fed. R. Civ. P. That rule states: "after the pleadings are closed but

---

[5] The most salient facts regarding this action, as the Court knows from hearing Eagle's TRO application, is that Edcomm has been foreclosed from the LinkedIn Account at issue, and Eagle has full access to that account – including all of the content developed by and for Edcomm at Edcomm's expense. (¶ 8).

3

within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 …"

The standard of review for a motion for judgment on the pleadings is identical to that of a Rule 12(b)(6), Fed. R. Civ. P., motion to dismiss. *Constitution Bank v. DiMarco*, 815 F.Supp. 154, 157 (E.D.Pa. 1993). The court may not grant judgment on the pleadings "unless the movant clearly establishes that no material issue of fact remains to be resolved and that the movant is entitled to judgment as a matter of law." *Rosenua v. Unifund Corp,* 539 F.3d 218, 221 (3d Cir. 2008). The court may consider the allegations in the pleadings, the attached exhibits, matters of public record and "undisputedly authentic" documents. *Pension Benefit Guar. Corp. v. White Consol. Indus. Inc.,* 998 F.3d 1192, 1196–97 (3d Cir.1993). All well-pleaded factual allegations are deemed true. Significantly, any allegation of the movant that is denied is deemed false. *Brinich v. Reading Co.,* 9 F.R.D. 420, 421 (E.D.Pa. 1949).

When judging the sufficiency of the pleading, courts apply the standards of *Ashcroft v. Iqbal,* __ U.S. __, 129 S.Ct. 1937 (2009) and *Bell Atlantic Corp. v. Twombly,* 550 U.S. 554, 570 (2007). Under *Twombly* and *Iqbal*, a counterclaim pleading is sufficient if, as here, the pleading "raise[s] a right to relief above the speculative level" such that the claim is "plausible on its face." *Twombly*, 550 U.S. at 570.

Here, Edcomm has alleged eight causes of action arising from specific and detailed misconduct of plaintiff Eagle. While Eagle may deny the allegations, under the required standards, all of Edcomm's factual allegations must be taken as true.

4

**ARGUMENT**

**IV. EDCOMM PROPERLY PLEADED THAT EAGLE VIOLATED THE CFAA BY ACCESSING PROTECTED COMPUTERS WITHOUT AUTHORIZATION CAUSING DAMAGE AND LOSS TO EDCOMM**

Edcomm's First and Second Causes of Action state claims against Eagle for violation of Sections (2)(C) and (5)(C) of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030(a)(2)(C) and (5)(C). Section 1030(a)(2)(C) prohibits a person from "intentionally access[ing] a computer without authorization" and thereby obtaining "information from any protected computer." Section 1030(a)(5)(C) makes it an offense if one "intentionally accesses a protected computer without authorization, and as a result of such conduct, causes damage and loss." Section 1030 broadly defines "computer," 18 U.S.C. §1030(e)(1), and extends the reach of the section to any "protected computer" which is "used in or affecting interstate or foreign commerce …" 18 U.S.C. § 1030(e)(2). Edcomm has more than sufficiently pleaded the elements of the section (2)(C) and (5)(C) offenses.

Edcomm's First Cause of Action centers on Eagle's misrepresentation – both of her employment status and supposed authorization from Edcomm – in order to access AT&T's computers to obtain and alter the data therein, namely the ownership information associated with the Number. *See generally* (¶¶ 11-22, 27-33). Specifically, Edcomm alleged that the cellular telephone numbers utilized by Edcomm employees, including Eagle, were the property of Edcomm. (¶¶ 12-14). Edcomm, immediately upon Eagle's termination, disabled Edcomm's Number that had been allocated to Eagle while she was an employee. (¶ 16). And it did so for a commercially significant reason – Edcomm had used the Number as a point of contact for clients and potential clients on its marketing literature. (¶ 17-18).

After termination, Eagle no longer had authorization to use Edcomm's passwords or other information for any purpose. (¶ 19). Nevertheless, without authorization, Eagle used

5

Edcomm's EIN (employer identification number) to access AT&T's computers and to obtain and then alter the ownership information over the Number. (¶¶ 20, 29-32). Thus, "without authorization," Eagle accessed a "protected computer" and obtained information. (¶¶ 29-32, 36-39). All of this caused harm to Edcomm. (¶¶ 21, 33, 40).

Eagle's arguments on the first cause of action are meritless. As an initial matter, Eagle ignores Edcomm's pleading that states quite clearly that Eagle's actions in accessing AT&T's computers to obtain information (and alter that information) regarding the ownership of the Number were done "without authorization." (¶¶ 19-20, 29-32, 39). Also, nothing in the pleading limits Eagle's wrongdoing simply to use of information that she otherwise had access to, such as in the cases cited by Eagle. As pled, Eagle accessed and obtained information. While it is also clear that she used the information, that is not a required part of the (2)(C) or (5)(C) offense.

Eagle relies on inapposite case law in her discussion of the standards for violations of (2)(C) and (5)(C) of the CFAA. Each of the cases cited relate to section (a)(4) of the Act, not (a)(2)(C) or (a)(5).[6] Section (a)(4) addresses unauthorized access to a computer with the intent to defraud and where the access furthers the intended fraud. *Integrated Waste*, 2010 WL 4910176, *7. Neither (2)(C) nor (5)(C) requires an intent to defraud or that the unauthorized access to a computer further the fraud. And the two other cases cited by Eagle involve an authorized individual, an employee or authorized consultant, who, during the term of their employment,

---

[6] For example, *Integrated Waste Solutions, Inc. v. Goverdhanam*, 2010 WL 4910176 (E.D.Pa. Nov. 30, 2010)(RB), before this Court, was an (a)(4) case related to cyber-attacks on plaintiff's web-site. Here, the Court found that the plaintiff had pleaded a plausible claim to survive a motion to dismiss.

6

"exceed[ed] authorized access."[7] That is simply not the case here – Eagle accessed computers "without authorization." (¶ 19, 31, 39).

Eagle also offers a throw-away, unsupported argument that the Act cannot apply because the asserted unauthorized access is through AT&T's computers. Nothing in the Act specifies who or what entity must own the computers so long as they fit the definitions of "computer" and "protected computer." AT&T's computers meet these definitions.

For purposes of pleading a violation of §1030(g), Edcomm has properly alleged that it has suffered and will continue to suffer economic damages as a result of Eagle's actions. Indeed, Edcomm has alleged that its injuries stem directly from the access to protected computers without authorization, since that access caused an alteration of the integrity of AT&Ts data and the loss of the Number to Eagle. (¶¶ 19-22). Additionally, Edcomm has had to bear the costs associated with replacing advertising that had the Number as a feature now that Eagle has absconded with the number. (¶¶ 17, 21). All of that is "damage and loss" sufficient to meet the pleading standards of the statute.

## V.   EDCOMM HAS PLEADED A TRADE SECRET CLAIM

Edcomm's Seventh Cause of Action states a claim under Pennsylvania's Uniform Trade Secrets Act ("PUTSA"), 12 Pa. Cons. Stat. Ann. § 5301, et seq. Edcomm has alleged a narrow trade secret claim focused on the AT&T Number that Eagle misappropriated as described

---

[7] In *Brett Senior & Assocs. v. Fitzgerald,* 2007 WL 2043377 (E.D. Pa. 2007), an employee who pulled customer lists off a work computer while still employed had not violated 18 U.S.C. § 1030(a)(4) because the employee was authorized to use the computer. Yet in *Bro-Tech Corp. v. Thermax, Inc.*, 651 F.Supp.2d 378, 407-08 (E.D. Pa. 2009), the court held that questions of fact regarding the authorization provided to the accused defendants in a section (a)(4) case made the issue a jury question not subject to a motion to dismiss.

7

above.[8]  Eagle, by virtue of her longstanding position as President of the company and one of its three shareholders for over two decades, gained access to "Edcomm's trade secrets," including Edcomm's AT&T account information and the manner and means for accessing that account – information that was both protected and not publicly available.  (¶¶ 20, 62).  Edcomm further alleged that Eagle misappropriated this information in order to have the Number transferred to her possession, where it rests today.  (¶ 63).  The above is sufficient for a trade secrets claim.

Under the statute and related caselaw interpreting PUTSA, a "trade secret" is "information" that "derives independent economic value … from not being generally known to, or readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use."  12 Pa. Cons. Stat. Ann. § 5302.  Under the statutory standard, the nonpublic information known by Eagle to access the AT&T account and have the Number transferred meets the definition of trade secret, much like the combination to a safe.

Eagle's memorandum tries to recast Edcomm's current claim to something it is not – the Seventh Cause of Action is not a claim that the names of customers listed on its web-site are "trade secrets."[9]  On the other hand, also not within the scope of the claim because of the co-pending New York Action, instructor contact information, known to the company but not readily ascertainable outside would qualify as trade secret information.  And the fact that some instructors might be identifiable generally, does not mean that all of them can be.  That is the basis of the claim, among others, in the New York Action.

---

[8] In the earlier filed New York Action, plaintiffs there, SISCOM and Edcomm, alleged more general trade secret claims that did not include the AT&T Number claim asserted here, which claim did not arise until after the complaint was filed in the New York Action.

[9] Eagle's citation to *Youtie v. Macy's Retail Holding, Inc.*, 653 F.Supp.2d 612 (E.D. Pa. 2009), merely restates the general law regarding customer lists – namely that if they are readily ascertainable (a question of fact) then they cannot be a trade secret.  *Youtie* addressed the trade secret issue as part of summary judgment after full discovery, not at the outset of the action on the pleadings.

8

Here, Eagle has used what is equivalent to a trade secret password to derive an economic benefit – the harnessing of the power of the Number that has been used to generate business for Edcomm. That account information is a trade secret and was misappropriated by Eagle. Edcomm has stated a claim.

## VI. EDCOMM'S COMMON LAW CLAIMS ARE WELL PLEADED

### A. Eagle has Converted the Number, the LinkedIn Account Connections and the Edcomm-issued Laptop

Edcomm's Fifth Cause of Action asserts that Eagle actively interfered with Edcomm's right to possession of the AT&T Number, the LinkedIn account connections and the Laptop issued by Edcomm for her use while she was an Edcomm employee. (¶¶ 52-53).

Edcomm starts from the same premise as Eagle – conversion is a tort by which a defendant deprives the plaintiff of its right to personal property without plaintiff's consent or other lawful justification. *Stevenson v. Economy Bank of Ambridge*, 197 A.2d 721, 726 (Pa. 1964).

Under the above standard, Edcomm has stated a claim for conversion of its Laptop. It is apparent that Eagle's request for judgment on the pleadings misunderstands or ignores crucial Edcomm pleadings. First, Eagle apparently miscomprehends the phrase "issued by Edcomm" to mean something other than a piece of property that was given for business purposes to Eagle. (¶ 23). Since that is clearly what the pleading states, Edcomm has asserted a possessory interest in the Laptop. Edcomm further alleges that it is the "rightful owner" of the Laptop. (¶ 52).

Because Eagle has denied Edcomm its possessory interest in the Laptop, she has converted it. Edcomm therefore states a claim for conversion.[10]

### B.     Eagle has Misappropriated the AT&T Number and LinkedIn Connections

Eagle's actions concerning the misrepresentation needed to obtain the AT&T Number and her taking of the intangible property rights in LinkedIn connections developed by Edcomm employees for Edcomm's business are sufficient to support a claim for misappropriation.[11]

A claim for misappropriation requires a plaintiff to plead (1) investment in the "thing" so as to create a kind of "property right" in the thing; (2) the defendant has appropriated the thing for little or no cost; and (3) the defendant has thereby injured the plaintiff.  *See Westport Ins. Co. v. Hanft & Knight, P.C.*, 523 F.Supp.2d 444, 459-60 (M.D.Pa. 2007) *citing Sorbee Int'l Ltd. v. Chubb Custom Ins. Co.,* 735 A.2d 712, 716 (Pa. Super. 1999).

In the Third Cause of Action and supporting pleadings, Edcomm has sufficiently and plausibly stated a claim for misappropriation.  With respect to the LinkedIn connections, Edcomm had policies implemented by Eagle that required Edcomm employees to have LinkedIn accounts.  (¶ 1).  With respect to the Eagle Account, Edcomm personnel developed and maintained all connections solely at Edcomm's expense and for its own benefit.  (¶ 6).  Thus, Edcomm made investment in the "thing," here, LinkedIn Account connections.  Because Eagle took the account and precluded access by Edcomm, she has appropriated the "thing."  Moreover, because the connections are the route by which Edcomm is able to contact instructors and specific personnel within its clients and because Eagle has interfered with that connection,

---

[10] Because the AT&T Number and the LinkedIn connections are intangible items that are not merged with tangible property, Edcomm will not pursue conversion claims with respect to these items.

[11] Much of Eagle's argument is that "misappropriation" must mean "trade secret misappropriation."  But in the Third Cause of Action, Edcomm never asserts trade secret misappropriation.  Moreover, Pennsylvania clearly recognizes the common law tort of misappropriation.  *See Blackmon v. Iverson*, 324 F.Supp.2d 602 (E.D.Pa. 2003).

10

Edcomm has alleged that Eagle's misappropriation has caused damage. (¶ 46). Moreover, Eagle has indicated that she is or intends to use the Account and its connections to compete with Edcomm, thereby causing further damage. (*Id.*).

Similarly, with respect to the AT&T Number, Edcomm has invested in the number, using it as part of its marketing materials and paying for its use. (¶¶ 11, 17). By misrepresenting her status, Eagle was able to procure the Number from AT&T and deprive Edcomm of its ownership over the number. (¶ 21). That deprivation is causing and will continue to cause harm to Edcomm. (*Id.*).

Edcomm, therefore, has sufficiently stated plausible claims for misappropriation.

### C. Eagle's Unfair Competitive Use of Edcomm's Confidential Information Supports an Unfair Competition Claim

Eagle has stated that she intends to engage in competition with Edcomm, and Edcomm has so pleaded. (¶¶ 46, 50). In this action, Edcomm by its Fourth Cause of Action seeks to prevent Eagle from engaging in two specific forms of unfair competition – (1) the use of the LinkedIn Account connections built by Edcomm for its business and (2) the use of the Number tied to Edcomm's promotional materials.

Eagle's motion is predicated on the mistaken notion that unfair competition claims under Pennsylvania law require "independently tortious conduct." *See* Eagle Memorandum, Doc. 35-1 at 14. Under Pennsylvania law, however, unfair competition is "independently tortious conduct (as are the other claims Edcomm has asserted). The support for this supposed requirement is case law regarding tortious interference claims. *See PennPac Int's, Inc. v. Rotonics Mfg., Inc.*, Civ. A. 99-CV-2890, 2001 WL 569264 at *13 (E.D. Pa. May 25, 2001) (tortious interference claims); *Nat'l Data Payment Sys., Inc. v. Meridian Bank*, 212 F.3d 849, 858 (3rd Cir. 2000) (addressing Restatement (Second) of Torts, § 768 regarding tortious interference and the

11

"independently actionable" standard).  Indeed, *PennPac,* cited by Eagle, lists "unfair competition" among examples of claims that *will* support a tortious interference claim.  2001 WL 569264, *13 ("antitrust, unfair competition, defamation and [] commercial disparagement" are independently actionable claims).

The parties agree that Pennsylvania recognizes a common law claim of unfair competition under the Restatement (Third) of Unfair Competition.  *Air Prods. and Chems., Inc. v. Inter-Chemical, Ltd.,* Civ. No. 03-6140, 2003 WL 22917491 (E.D. Pa. 2003).  Under that law, claims, like Edcomm's, that Eagle has stolen proprietary information is sufficient to meet the pleading requirements for unfair competition.  *See, e.g., Synthes (USA) v. Globus Medical, Inc.,* Civ. A. 04-1235, 2007 WL 2043184, *10 (E.D. Pa. Jul. 12, 2007) (theft and use of proprietary information by Globus supported Synthes claim of unfair competition).  Edcomm has sufficiently stated a claim for unfair competition against Eagle.

        **D.**    **Edcomm's Interference Claims Meet the Required Pleading Standards**

              **1.**    <u>Eagle Tortiously Interfered with the AT&T Contract</u>

Edcomm agrees with the standard set forth in Eagle's memorandum (pp. 14-15) for tortious interference with contract:  (1) an existing contractual relationship; (2) the purpose or intent to harm the plaintiff by interfering with the relationship; (3) the absence of privilege or justification on the part of the defendant; and (4) actual damage resulting from the defendant's conduct.  *See Alpart v. Gen. Land Partners, Inc.*, 574 F.Supp.2d 491, 505 (E.D. Pa. 2008).  Yet contrary to Eagle's motion, Edcomm meets the standards.  Edcomm pleaded the existence of a contract with AT&T (¶ 56), Eagle's awareness of the contract (¶ 57), her unjustified interference with that contract (¶¶ 19-22, 58) and damages resulting from that interference (¶ 60).

The facts pleaded make clear that Eagle improperly misappropriated the AT&T Number, that it was intimately tied to Edcomm's marketing and advertising and that Edcomm is damaged

thereby. That is sufficient to state a claim and demand from Eagle the proofs to further build on the extent of the damage she has caused.

### 2. Eagle Has Tortiously Interfered with Edcomm's Prospective Business Relations

Building further on her tortious interference with contract, Eagle has also interfered with Edcomm's prospective business relationships. Again, there is no dispute on the standard (Eagle Mem. p. 15), but rather on the application of that standard to the pleadings before the Court.

Here Eagle has interfered with the AT&T contract, thereby moving the Number to her exclusive use and control. Since that Number is tied to Edcomm's marketing materials, Eagle's use of the Number is tantamount to a passing off, representing that she is Edcomm and acquiring business that channels through the Number. (¶¶ 17, 19-22, 68). Eagle has effectively stood in for Edcomm on all calls generated from the marketing and related advertising materials, to the detriment of Edcomm. That is sufficient to move forward on discovery with the extent of her interference.

## VII.   CONCLUSION

For the foregoing reasons, Edcomm's counterclaims should be permitted to proceed, and Plaintiff Eagle's motion for judgment on the pleading should be denied. To the extent the Court determines that any claim should be dismissed, Edcomm requests that such dismissal be without prejudice and with leave to replead.

Dated: October 19, 2011

/s/ Samantha L. Southall
Samantha L. Southall, Esq. (Pa. I.D. No. 80709)
samantha.southall@bipc.com
BUCHANAN INGERSOLL & ROONEY PC
Two Liberty Place
50 S. 16th Street, Suite 3200

13

Philadelphia, PA 19102-2555
Telephone:  (215) 665-8700
Facsimile:  (215) 665-8760

Philip L. Hirschhorn (admitted *pro hac vice*)
philip.hirschhorn@bipc.com
BUCHANAN INGERSOLL & ROONEY PC
1290 Avenue of the Americas, 30th Floor
New York, New York 10104
Telephone: (212) 440-4400
Facsimile:  (212) 440-4401

*Counsel for Defendants/Counterclaim Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 19th day of October, 2011, the foregoing document was filed using the CM/ECF system.  The filing is available for viewing and downloading via the CM/ECF system and the CM/ECF system will send notification of such filling to all attorneys of record who have registered for CM/ECF updates.

/s/ Samantha L. Southall<br>
Samantha L. Southall